UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JG & PG, on behalf of their minor child, JG III and
on their own behalves, ET AL.,

                              Plaintiffs,

                                                     08 cv 5668 (SCR)

     -against-

TAMMY CARD, JOYCE SPIEGEL, LORRIE,
REYNOLDS, JOSEPH LEVY, SHERRY STREITAS,
CAROL DeALLEAUME, DR. ROBERT J. REIDY, JR.,           ECF Case
MAHOPAC CENTRAL SCHOOL DISTRICT,

                              Defendants.
-----------------------------------------------------------------X

## PLAINTIFFS' MEMORANDUM OF LAW IN
## OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

CHRISTOPHER D. WATKINS (CW 2240)
MICHAEL H. SUSSMAN (MS 3497)

SUSSMAN & WATKINS
P.O. Box 1005
40 Park Place
Goshen, New York 10924
(845) 294-3991
Attorneys for Plaintiffs

## TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     A.    The Moving Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     B.    The Pervasive Abuse and Mistreatment of Plaintiffs' Autistic Children . . . . . . . . 2

     C.    The Effects of the Abuse and Mistreatment on Plaintiffs' Children . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

POINT I:     MOTION TO DISMISS STANDARDS . . . . . . . . . . . . . . . . . . . . . . . . . . 7

POINT II:    PLAINTIFFS HAVE PLED VIABLE CONSTITUTIONAL
             CLAIMS AGAINST MOVING DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . 8

     A.    The Individual Moving Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

     B.    The School District . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

POINT III:   THE SCHOOL DISTRICT IS SUBJECT TO LIABILITY
             FOR NEGLIGENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

     A.    Direct Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

     B.    *Respondeat Superior* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

POINT IV:   PLAINTIFFS' NEGLIGENT INFLICTION CLAIMS
             SHOULD NOT BE DISMISSED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

POINT V:    THE SCHOOL DISTRICT IS SUBJECT TO LIABILITY
             FOR NEGLIGENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## TABLE OF AUTHORITIES

**CASES**

Back v. Hastings on the Hudson UFSD, 365 F.3d 107 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . 8

Belpasso v. City of New York, 2008 U.S. Dist. LEXIS 51391 (S.D.N.Y. July 2, 2008) . . . . . . 16

Benzman v. Whitman, 523 F.3d 119 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Colon v. Coughlin, 58 F.3d 865 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Conley v. Gibson, 355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

County of Sacramento v. Lewis, 523 U.S. 833 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

DeShaney v. Winnebago County Dep't of Social Services, 489 U.S. 189 (1989) . . . . . . . . . . . 9

Dockery v. Barnett, 167 F.Supp.2d 597 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Doe v. Bd. of Educ., 9 A.D.3d 588 (3d Dept. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Doe v. New York City Dept. of Social Services, 649 F.2d 134 (2d Cir. 1981) . . . . . . . . . . . . . 14

Harlow v. Fitzgerald, 457 U.S. 800 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Herrick Co. v. SCS Communs., Inc., 251 F.3d 315 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . 19

Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246 (2d Cir. 2001) . . . . . . . . . . . 10, 13-15

Kerman v. City of New York, 374 F.3d 93 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

Marisol A. v. Giuliani, 929 F. Supp. 662 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Mirand v. New York City, 84 N.Y.2d 44 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Mortise v. United, 102 F.3d 693 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Phelps v. Kapnolas, 308 F.3d 180 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Poe v. Leonard, 282 F.3d 123 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

<u>Riviello v. Waldron</u>, 47 N.Y.2d 297 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

<u>Russo v. City of Bridgeport</u>, 479 F.3d 196 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

<u>Salahuddin v. Goord</u>, 467 F.3d 263 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

<u>Scheuer v. Rhodes</u>, 416 U.S. 232 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

<u>Society for Goodwill to Retarded Children, Inc. v. Cuomo</u>, 737 F.2d 1239 (2d Cir. 1984) . . . . . 9

<u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>Tennessee v. Garner</u>, 471 U.S. 1 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

<u>Walker v. New York</u>, 974 F.2d 293 (2d Cir. N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

<u>West v. Whitehead</u>, 2008 U.S. Dist. LEXIS 68812 (S.D.N.Y. Sept. 11, 2008) . . . . . . . 11-12, 16

<u>Williams v. Smith</u>, 781 F.2d 319 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

<u>Youngberg v. Romeo</u>, 457 U.S. 307 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**STATUTES**

28 U.S.C. § 1367(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 13

New York Executive Law § 296 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7, 20

## PRELIMINARY STATEMENT

Plaintiffs respectfully submit this memorandum of law in opposition to the motions to dismiss of defendants Mahopac Central School District ("the District" or "the School District"), Dr. Robert J. Reidy, Jr. ("Reidy") and Carol DeAlleaume ("DeAlleaume") (collectively "the moving defendants").

Moving defendants seek dismissal of all causes of action against them: (I) violation of plaintiffs' substantive due process rights under the Fourteenth Amendment, as made actionable by 42 U.S.C. § 1983; (ii) negligence; (iii) negligent infliction of emotional distress; and (iv) violations of plaintiffs' rights to be free from disability discrimination under New York Executive Law § 296, the New York Human Rights Law ("NYHRL"). As set forth below, the Complaint's well pled allegations, taken as true, make out viable claims of constitutional violations and state law torts. Thus, defendants' motions must be denied.

## STATEMENT OF FACTS

**A.      The Moving Defendants**

Defendant Reidy is Superintendent of Schools and "responsible for the operation of the school district, including the hiring, retention and appropriate training and discipline of staff, their supervision and discipline." (Compl. ¶ 9). Reidy was "an official with policy-making authority with respect to defendant district's administration of the Bridge program," the program administered by the School District in which plaintiffs' young autistic children were enrolled during the 2006-07 school year. (Id. ¶ 202; see id. ¶¶ 2, 26)). Reidy "had a mandatory duty to supervise and prevent harm to the plaintiff children." (Id. ¶ 198).

Defendant DeAlleaume served as interim principal of Mahopac Falls Elementary School

1

for the second semester of the 2006-07 school year. (Id. ¶ 5). She was "directly responsible for supervising the conduct of defendants Card, Reynolds, Spiegel, Streitas and Levy," the teacher, teacher's aides and speech pathologist assigned to the Bridge program in 2006-07. (Id. ¶¶ 4, 5, 6, 7). Like Reidy, DeAlleaume "had a mandatory duty to supervise and prevent harm to the plaintiff children." (Id. ¶ 198).

**B.      The Pervasive Abuse and Mistreatment of Plaintiffs' Autistic Children**

During the 2006-07 school year, defendants Card, Levy and Reynolds "used degrading nicknames for the autistic children in the [Bridge program] class, including 'Sloth,' 'Poor Thing,' 'Drool Machine,' 'Nico Nico Pancake Freako,' 'Mosquito,' 'Old Man,' 'Froggy,' 'Satan's Child,' 'Chicken Butt' and 'Rodent.'" (Id. ¶ 10(a)).[1]

Levy slapped Card's buttocks and massaged her in front of the students, and Spiegel and Levy gave each other massages in the classroom. Levy grabbed Streitas' breasts in front of the children. Spiegel exposed her breasts to the students and announced that she wanted to "brighten your day." She also exposed her nipples to the children. Levy and Reynolds engaged in explicit sexual discussions in front of the students. (Id. ¶ 10(b)-(h)).

In addition, defendant staff punished children by locking them in isolation rooms (closets and bathrooms) causing them to scream and deeply disturbing the other children; Spiegel falsified school records to reflect that she had provided required speech therapy when she had not done so; Levy and Reynolds altered a communication device to humiliate and mock its user; Levy rolled a ball at students' legs, attempting to trip them; Card and others physically restrained

---

[1] The Complaint's allegations of what occurred in the Bridge program during the 2006-07 school year are based primarily on reports from four non-defendant adults who worked in the program during that year. (Compl. ¶ 10).

children in a manner not permitted by their Individual Education Plans ("IEPs"); staff punished children by withholding lunch, including plaintiffs' L.A. and G.A.'s child, F.A.; Levy held children's heads, including F.A., down on their desks as punishment; Levy placed F.A. in a closet in the gym; Card caused F.A. to fall and injure his nose and face and then failed to take him to the school nurse for treatment; Card and the teacher aides punished children by not changing their soiled diapers, including plaintiffs M.S. and R.S.'s child, M.A.S.; Levy and Reynolds reportedly took photographs of some of students' private parts; Card force-fed children, including plaintiff L.B.'s child, R.B., causing them to choke, gag and vomit; and Bridge program staff encouraged students to punch other students, including N.B.. (Compl. ¶¶ 10(g)-(j), 11, 30, 59, 60, 62, 68-70, 104, 124, 126, 129-30, 145, 159-61, 185-87).

In early May 2007, the Carmel Police Department arrested defendants Card, Spiegel, Levy and Reynolds for child endangerment arising from mistreatment of plaintiffs' children, among others, in the Bridge program. (Id. ¶ 17).

**C.     The Effects of The Abuse and Mistreatment on Plaintiffs' Children**

**1.     J.G. III**

Plaintiffs J.G., Jr. and P.G. are the parents of J.G. III, who was six years old during the 2006-07 school year. (Id. ¶ 20). At two, he was diagnosed with autism and pervasive developmental disorder ("PDD"). (Id. ¶ 21). Before entering the Bridge program in 2005 he was described as very friendly and happy. (Id.¶ 22).

While in the Bridge program, J.G. III was reluctant to go to school, increasingly anxious and teary-eyed. (Id. ¶ 31). As his behavior deteriorated he became rude, bossy, used inappropriate language and became highly sexualized, asking people if they had penises and

3

touching others' crotches.  He transformed into a disruptive, anxious child.  (Id. ¶ 33).

In May/June 2007, a psychiatrist noted that JG III exhibited several behaviors consistent with having been subjected to mistreatment in the Bridge program, including that he would suddenly start screaming and ask strangers, "Why are you looking at me," and tell them, "stop looking at me."  (Id. ¶ 38).  Another psychiatrist concluded he had been exposed to "inappropriate sexual contact."  (Id. ¶ 40).  As of November 2007, a child psychiatrist noted that he continued to manifest pronounced effects of an "abnormally punitive school environment," including showing very poor eye contact, yelling phrases which "seem to be direct quotes from probable situations in the past," and having "great difficulty interacting on any level."  (Id. ¶ 41).

### 2.    F.A.

Plaintiffs L.A. and G.A. are the parents of F.A., who was five years-old during the 2006-07 school year.  (Id. ¶ 46).  At three, F.A. was diagnosed on the autistic spectrum with PDD NOS.  (Id. ¶¶ 47, 49).  He was enrolled in the Bridge program in September 2006.  (Id. 49).

In contrast to his attitude toward attending other schools, F.A. was so reluctant to attend class at the Bridge program that he would cry, kick and scream.  (Id. ¶¶ 55-56).  In response to his mother's inquiries, Card reassured her that F.A.'s reluctance was normal and that he was in good hands.  (Id. ¶ 58).  F.A.'s reluctance continued and he began "obsessing" about breasts and penises.  (Id. ¶ 66).  In March 2007, Card intentionally caused F.A. to fall and injure his nose and face.  (Id. ¶ 68).  When G.A. called Card about her son's injuries, Card falsely claimed that F.A. fell accidentally.  (Id. ¶ 70).  Despite knowing of the incident, the school made no contemporaneous report about it or Card's role in causing injury to F.A.  (Id. ¶¶ 68-69).

In May 2007, a psychiatrist noted that F.A. showed a "significant decline in function"

4

during the 2006-07 school year. (Id. ¶ 75). Among other things, F.A. had become increasingly anxious, disliked school, displayed severe separation anxiety and had nightmares in which he woke up saying, "Don't touch me, don't touch me." (Id.). As of March 2008, testing showed substantial regression in auditory comprehension and expressive communication. (Id. ¶ 91).

### 3.   M.A.S.

Plaintiffs M.S. and R.S. are the parents of M.A.S., who turned six years old during the 2006-07 school year. (Id. ¶¶ 92-93). At three, he was diagnosed with PDD; he began in the Bridge program in September 2005. (Id. ¶¶ 94, 95).

M.A.S. was reluctant to attend class and had problems throughout his first year in the Bridge program. (Id. ¶¶ 96-109). From October 2006-March 2007, M.A.S. became increasingly aggressive, upset and uncooperative. (Id. ¶ 112). He "continued to wet himself almost every day in school." (Id. ¶ 113). In February 2007, Card laughingly told R.S. that M.A.S. would not step foot in the bathroom at school. (Id. ¶ 115). In fact, Card directed teacher aides not to change M.A.S.'s soiled diaper to punish him for wetting his pants. (Id. ¶ 124).

During the 2006-07 school year, M.A.S. began exposing himself to his sister and talking about the size of his penis. (Id. ¶ 129). He later told R.S. that defendants Levy and Reynolds took photographs of children's private parts. (Id. ¶ 130).

In May 2007, a psychiatrist noted that M.A.S. had "regressed considerably" and shown a "tremendous increase in anxiety." His regression occurred "in the content of a classroom in which he was afraid of the adults for much of the day for many months." (Id. ¶ 131). M.A.S. has continued to act out with other children, including in sexually inappropriate manners. (Id. ¶ 136).

### 4.   V.S.

Plaintiffs T.S. and N.S. are the parents of V.S., who was six years old during the 2006-07 school year. (<u>Id.</u> ¶ 139). V.S. was enrolled in the Bridge program in September 2005. (<u>Id.</u> ¶ 141). During 2006-07, he expressed fear about going to school and would yell out, "Put your head down." (<u>Id.</u> ¶ 143). Defendant staff in the Bridge program degraded V.S. by calling him a variety of mocking names, including "Froggy," "Old Man" and "Mosquito." (<u>Id.</u> ¶ 145).

As with others, V.S. became averse to using the bathroom because defendants punished students by locking them in bathrooms. (¶¶ 148-49). Also like others, V.S. began to display an obsession with his penis and womens' breasts. (<u>Id.</u> ¶ 151).

In May 2007, a psychiatrist noted that V.S. had regressed, including by exhibiting markedly increased levels of anxiety and separation anxiety. (<u>Id.</u> ¶¶ 153-54). He also began to show signs of paranoia and a marked concern about the safety of other children. (<u>Id.</u> ¶ 155A).

### 5.    R.B.

Plaintiff L.B. is the father of R.B., who began attending the Bridge program in 2005. (<u>Id.</u> ¶¶ 157-58). During the 2006-07 school year, defendant staff force-fed R.B. causing him to choke and vomit. (<u>Id.</u> ¶¶ 159-61).

### 6.    N.C.

Plaintiffs T.C. and T.C. are the parents of N.C., who was five years old during the 2006-07 school year. (<u>Id.</u> ¶ 166). N.C. is classified as having PDD and enrolled in the Bridge program in September 2006. (<u>Id.</u> ¶¶ 169-69).

Although toilet trained before starting the Bridge program, N.C. began to come home from school soiled. (<u>Id.</u> ¶¶ 170-71). He grew anxious when the bathroom door at home was closed, and would only use it if the door was open, a behavior which continues. (<u>Id.</u> ¶ 173-74).

This resulted from his traumatic experiences in the Bridge classroom. (Id. ¶ 175). He also grew extremely sensitive to even slightly raised voices, yelling, "why are you mad at me, stop being mad." (Id. ¶ 176). This derived from the verbal abuse he was subject to in the Bridge program. (Id. ¶ 176). His self-esteem and self-confidence diminished because of trauma from the Bridge program. (Id. ¶ 177).

7.    **N.C.**

Plaintiff R.B. is the mother of N.B., who was diagnosed with autism in April 2006. (Id. ¶¶ 178, 180). He was enrolled in the Bridge program in September 2006. (Id. ¶ 181). Over the course of the school year, N.B. had increasing tantrums and crying spells based on his reluctance to go to school. He referred to getting hurt at school and often refused to go. (Id. ¶¶ 182-84). Staff intentionally physically injured N.B. and encouraged another student to punch him. (Id. ¶¶ 185-87). He was further traumatized by the mistreatment of other children he observed in the Bridge program. (Id. ¶ 193).

## ARGUMENT

### POINT I

### MOTION TO DISMISS STANDARDS

A complaint may not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In deciding whether a complaint states a claim, the court must accept as true all factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff. Phelps v. Kapnolas, 308 F.3d 180, 184 (2d Cir. 2002).

The court may not use a pleading standard that exceeds the pleading requirements set forth in the Federal Rules of Civil Procedure to evaluate the sufficiency of a complaint on a motion to dismiss. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512-14 (2002). Rule 8(a)(2) provides that a complaint need include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Such a statement must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. Given the Federal Rules' simplified standard for pleading, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Swierkiewicz, 534 U.S. at 514.

## POINT II

### PLAINTIFFS HAVE PLED VIABLE CONSTITUTIONAL CLAIMS AGAINST MOVING DEFENDANTS

**A.      The Individual Moving Defendants**

To hold the individual moving defendants (Reidy and DeAlleaume) liable on their Section 1983 claims, plaintiffs must show that their constitutional rights were violated and that Reidy and DeAlleaume were "personally involved" in the violation. See Back v. Hastings on the Hudson UFSD, 365 F.3d 107, 122 (2d Cir. 2004) ("personal involvement of defendants in alleged constitutional deprivations is prerequisite to an award of damages under § 1983").

**1.      The Complaint Alleges a Constitutional Violation**

The Supreme Court has "emphasized time and again that 'the touchstone of due process is protection of the individual against arbitrary action of government,' whether the fault lies in a denial of fundamental procedural fairness, or in the exercise of power without any reasonable

8

justification in the service of a legitimate governmental objective." <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 846 (1998) (internal citations omitted). "[T]he due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm," and "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." <u>Id.</u>, 523 U.S. at 848; <u>see also</u> <u>DeShaney v. Winnebago County Dep't of Social Services</u>, 489 U.S. 189, 202 (1989) ("the Due Process Clause of the Fourteenth Amendment . . . does not transform every tort committed by a state actor into a constitutional violation").

"[T]o establish a violation of a right to substantive due process, a plaintiff must demonstrate . . . that the government action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" <u>Benzman v. Whitman</u>, 523 F.3d 119, 126-127 (2d Cir. 2008). The sort of state action most likely to rise the conscience-shocking level is "conduct intended to injure in some way" which is "unjustifiable by any government interest." <u>County of Sacramento</u>, 523 U.S. at 848.

In addition, the Supreme Court has held that mentally retarded individuals confined to a state institution have a constitutionally protected liberty interest in conditions of reasonable care and safety, freedom from unreasonable bodily restraint, as well as such minimally adequate training that will ensure these interests. <u>Youngberg v. Romeo</u>, 457 U.S. 307 (1982). This same liberty interest is implicated in the school setting. <u>See</u> <u>Society for Goodwill to Retarded Children, Inc. v. Cuomo</u>, 737 F.2d 1239 (2d Cir. 1984).

Here, the non-moving defendants' misconduct was intended to and did injure plaintiffs' children and it was not justifiable by any government interest. These children, who were all five

to seven years old and autistic while in defendant School District's Bridge program, were subjected to verbal taunting based on their disabilities, sexual misconduct,[2] cruel punishments, including food deprivation, isolation and deprivation of basic care (such as failure to change soiled diapers), other psychological abuse, and physical abuse.[3]   The perpetrators were School District employees charged with their direct supervision and care.   The abuse and mistreatment were not isolated, but instead continuous and pervasive.   As the complaint describes, this abuse and mistreatment had foreseeable severe and long-term consequences on these vulnerable

_____

[2] Some of the alleged sexual misconduct is specifically alleged in the complaint, e.g., Levy grabbing Streitas' breasts, Spiegel exposing her breasts to the children, Levy and Reynolds engaging in explicit sexual talk in front of the children, and Levy and Reynolds' allegedly photographing children's private parts.  (See Compl. ¶ 10(b)-(h), ¶ 130).  However, given that many of plaintiffs' children became hyper-sexualized in similar ways based on their experiences in the Bridge program – obsessing about their penises and women's breasts, touching others in a sexual manner, exposing themselves – there is a reasonable possibility that discovery (including evidence gathered in the criminal prosecution of the non-moving defendants) will reveal additional, and perhaps even more disturbing, sexual misconduct.  Given the young ages of plaintiffs' children and the fact that they are all either non-verbal or verbally challenged, even more latitude than usual should be given to plaintiffs to supplement the specific allegations in their complaint through the discovery process.

[3] Some of the plaintiffs have alleged facts which, if proven, would establish violations of their children's right to be free from the use of excessive force.  Specifically, the complaint alleges that Card intentionally caused F.A. to fall causing him injuries to his nose and face (Compl. ¶ 68), Levy forcefully held F.A.'s head down on his desk for several seconds on multiple occasions (Id. ¶ 60), Card force-fed R.B. while restraining his hands and head, causing him to choke and vomit (Id. ¶¶ 160-61), Levy rolled large balls at N.B. to trip him (Id. ¶ 185), defendant staff encouraged another student to punch N.B. (¶ 187), and Levy pushed down V.S. by his neck.  (Id. ¶ 146).  See Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 253 (2d Cir. 2001) (holding that "individuals possess a Fourteenth Amendment substantive due process right 'in the non-seizure, non-prisoner context' to be free from excessive force employed by government actors acting under the color of government authority" and that school district, officials and teachers could be found to have violated student's substantive due process rights based on teacher's assault of student).

children.  Indeed, the direct perpetrators were charged criminally for their actions.

The abuse and mistreatment described in the complaint clearly rises to the conscience-shocking level.  See West v. Whitehead, 2008 U.S. Dist. LEXIS 68812, *55-*57 (S.D.N.Y. Sept. 11, 2008) (Karas, J.) (denying summary judgment on substantive due process claim brought by parents of mentally retarded child who, while in state care, was allegedly threatened with a hairbrush, had a bib placed over her face on two occasions to stop her from vocalizing and hit with a plastic hanger on one occasion);Dockery v. Barnett, 167 F.Supp.2d 597, 603-04 (S.D.N.Y. 2001) (holding that alleged abuse of autistic children by teacher, which included force-feeding and repeated grabbing, was sufficient to sustain substantive due process claim and noting that psychological injuries supported claim); Marisol A. v. Giuliani, 929 F. Supp. 662, 674-75 (S.D.N.Y. 1996) (substantive due process clause protects children from unjustifiable psychological and emotional as well as physical harm).

The allegations of psychological, sexual and physical abuse and misconduct here are more egregious than those Judge Karas found to be conscious-shocking in West or Judge McMahon found to be conscious-shocking in Dockery.  As in those cases, plaintiffs' children were vulnerable, extremely dependent on School District staff for their care and supervision, and unable to defend themselves or effectively report the abuse to which they were subjected.  See West, 2008 U.S. Dist. LEXIS at *56 ("if the alleged incidents occurred as Plaintiff claims, the Court finds that a reasonable jury could conclude – taking into consideration Plaintiff's vulnerable state, her complete dependence on the BRH staff members, and her inability to defend herself or report any abuse that suffers – that any conduct which takes advantage of these facts and causes her substantial harm shocks the conscience, and therefore, violated Plaintiff's

11

constitutional rights"); <u>Dockery</u>, 167 F.Supp.2d at 604 (noting that summary judgment was especially inappropriate "considering that the alleged abuses continued over the course of an entire school year, and plaintiffs in this case are autistic children, who are more vulnerable and less capable of communicating than other children"). These factors make the allegations of abuse and mistreatment particularly conscious-shocking. <u>See</u> <u>id.</u>

Moreover, in <u>Dockery</u> and <u>West</u> no defendant was criminally prosecuted for the underlying abuse or mistreatment. Here, Card, Spiegel, Levy and Reynolds were arrested and subject to criminal prosecution based on the allegations set forth in the complaint. (<u>See</u> Compl. ¶ 17). This factor further supports finding, particularly at this pleading stage, that the alleged abuse and mistreatment of plaintiffs' children rises to the conscience-shocking level.

### 2. The Complaint Sufficiently Alleges "Personal Involvement" by Reidy and DeAlleaume

In reviewing a complaint in the face of a motion to dismiss, "the issue is not whether the plaintiff will prevail on the merits but whether the claimant is entitled to offer evidence to support the claims." <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974). The question of the individual moving defendants' personal involvement in the underlying § 1983 violations turns on factual determinations. <u>Williams v. Smith</u>, 781 F.2d 319, 322 (2d Cir. 1986). Thus, dismissal is not appropriate.

Both Reidy, as superintendent, and DeAlleaume, as school principal, were "supervisory officials." According to the Complaint, Reidy was "responsible for . . . the hiring, retention, and appropriate training and discipline of staff, their training and supervision," and had "policy-making authority with respect to the defendant district's administration of the Bridge program."

12

(Complaint ¶ 9, ¶ 202). DeAlleaume, as interim principal of the elementary school during the second semester of 2006-07, "was directly responsible for supervising the conduct of defendants Card, Reynolds, Speigel, Streitas and Levy." (Id. ¶ 5).

Under 42 U.S.C. § 1983, "personal involvement of a supervisory official may be established 'by evidence that: (1) the [official] participated directly in the alleged constitutional violation, (2) the [official], after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the [official] created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the [official] was grossly negligent in supervising subordinates who committed the wrongful acts, *or* (5) the [official] exhibited deliberate indifference to the rights of [others] by failing to act on information indicating that unconstitutional acts were occurring.'" Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 254 (2d Cir. 2001) (emphasis added) (quoting Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)).

Plaintiffs allege that Reidy and DeAlleaume were personally involved in the constitutional violations because they allowed a custom or policy to continue under which unconstitutional practices occurred; and/or they were grossly negligent in supervising subordinates; and/or they exhibited deliberate indifference by failing to act on information that unconstitutional acts were occurring. Any of these three bases is sufficient to support individual supervisor liability. See Johnson, 239 F.3d at 254.

According to the Complaint, defendants had a mandatory duty to supervise and prevent harm to the plaintiffs' children. (Compl. ¶ 198). In addition, defendants had a "policy, practice and/or custom" of failing to properly hire, train and/or supervise the Bridge program staff which

proximately caused injuries to plaintiffs' children.  (Id. ¶¶ 200, 201).  If plaintiffs establish as much during discovery then these moving defendants will be subject to liability under § 1983.  See Tennessee v. Garner, 471 U.S. 1 (1985); Walker v. New York, 974 F.2d 293, 297-298 (2d Cir. N.Y. 1992).

Here, it is within reason that plaintiffs will be able to establish that Reidy and DeAlleaume (and the school district) knew to a "moral certainty" that the Bridge program employees would confront particularly challenging classroom conditions based on the plaintiffs' children's disabilities.  Further, plaintiffs plausibly may establish that these defendants failed to provide necessary training and/or supervision to prevent the Bridge program staff from making choices in the face of such challenges which would lead to constitutional deprivations, such as the infliction of physical or emotional abuse.  In other words, plaintiffs may plausibly be able to show that these defendants knew that their failure to supervise and/or train and/or use reasonable diligence in hiring would lead to a breach of their mandatory duty to keep plaintiffs' children from foreseeable harms.  See Doe v. New York City Dept. of Social Services, 649 F.2d 134, 144 (2d Cir. 1981) ("When individuals are placed in custody or under the care of the government, their governmental custodians are sometimes charged with affirmative duties, the nonfeasance of which may violate the constitution. Thus, non-performance of such custodial duties has been held to give rise to §1983 cause of action"); Walker, 974 F.2d at 297

In addition, taking the Complaint's allegations as true, it is clear that Reidy, DeAlleaume and the School District were negligent in supervising the Bridge program and staff within that program.  Whether the breaches of their mandatory duties resulted from mere negligence or "gross negligence" is a question that cannot, and should not, be answered definitively at this

14

stage of the litigation.  Given how pervasive and widespread the abuse and mistreatment was in the Bridge program, at this stage there is more than enough basis to infer that these defendants were "grossly negligent" in failing to protect plaintiffs' children from foreseeable harms.  If plaintiffs establish that Reidy and/or DeAlleaume were grossly negligent, then they will be subject to supervisory liability under § 1983.  Johnson, 239 F.3d 246 at 254.

Finally, the Complaint alleges that Reidy, DeAlleaume and other supervisory officials had actual and constructive knowledge of potential constitutional violations and failed to take action. (See Compl. ¶¶ 12, 68-71, 122, 188, 189).  While defendants may disclaim such knowledge, it is premature for the Court to decide whether plaintiffs will be able to establish the requisite actual or constructive knowledge under § 1983.  Thus, defendants' motion should be denied on this basis as well.

**B.     Qualified Immunity Should Be Denied**

Qualified immunity "shields public officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Salahuddin v. Goord, 467 F.3d 263, 273 (2d Cir. 2006) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  To be awarded qualified immunity a defendant must show either (1) that his actions did not violate clearly established law or (2) that it was objectively reasonable for the defendant to believe that his action did not violate such law. Russo v. City of Bridgeport, 479 F.3d 196, 211 (2d Cir. 2007).  The first issue presents a question of law, the second a question of fact.  See Kerman v. City of New York, 374 F.3d 93, 109 (2d Cir. 2004) ("Although a conclusion that the defendant official's conduct was objectively reasonable as a matter of law may be appropriate where there is no dispute as to the material

historical facts, if there is such a dispute, the factual questions must be resolved by the factfinder. 'Though immunity ordinarily should be decided by the court, . . . that is true only in those cases where the facts concerning the availability of the defense are undisputed; otherwise, jury consideration is normally required.'").

As Judge Karas held in <u>West</u>, "the courts have held that someone in Plaintiff's position has a liberty interest in reasonably safe conditions and freedom from physical, emotional, and psychological harm, . . . and freedom from excessive force unjustified by any legitimate government purpose." <u>West</u>, 2008 U.S. Dist. LEXIS 68812, at * 56. Thus, defendants cannot show that their alleged acts and omissions as supervisors did not violate clearly established law. <u>See</u> <u>Poe v. Leonard</u>, 282 F.3d 123, 126 (2d Cir. 2002) ("in order for a supervisor to be held liable under section 1983, both the law allegedly violated by the subordinate and the supervisory liability doctrine under which the plaintiff seeks to hold the supervisor liable must be clearly established."). Moreover, because plaintiffs may reasonably be able to establish that defendants' acts and omissions subject them to supervisor liability under § 1983, they are not entitled to qualified immunity as a matter of law. <u>See</u> <u>Kerman</u>, 374 F.3d at 109.

**C.     The School District**

The School District is subject to liability under § 1983 if an official with final policy-making authority was personally involved in the alleged constitutional deprivation or it had a custom or policy which proximately caused the constitutional deprivation. <u>See</u> <u>Belpasso v. City of New York</u>, 2008 U.S. Dist. LEXIS 51391, *12 (S.D.N.Y. July 2, 2008) ("a plaintiff must show that his injury resulted from a municipal policy or practice. Such a policy or practice need not necessarily be articulated as an official, stated directive. It can be a widespread pattern of

16

behavior that becomes 'a custom or usage with the force of law' or a matter of 'constructive acquiescence of senior policy-making officials.'")(citing <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694 (1978)).

Plaintiffs have pled both bases for municipal liability. First, as set forth above, plaintiffs may reasonably be able to establish that Reidy, a school district official with final policymaking authority over the Bridge program, was "personally involved" in the underlying constitutional violation under the doctrine of supervisor liability. Second, plaintiffs may reasonably be able to establish that the district maintained a custom or policy of failing to properly "hire, train and/or supervise" the staff assigned to work with plaintiffs' children, and this custom or policy was a proximate cause of the injuries to plaintiffs' children. Thus, dismissal is not warranted.

## POINT III

**THE SCHOOL DISTRICT IS SUBJECT TO LIABILITY FOR NEGLIGENCE**

The School District may he held liable on plaintiffs' negligence claims either directly for its negligence in failing to protect plaintiffs' children from harm or through the doctrine of *respondeat superior*, or both. Although defendants do not specifically argue as to why plaintiffs' direct negligence claims against the District should be dismissed, they are moving to dismiss all claims. Thus, plaintiffs briefly address the District's direct liability for negligence.[4]

**A.      Direct Liability**

"It is well settled that '[s]chools are under a duty to adequately supervise the students in

---

[4] As defendants acknowledge, Reidy and DeAlleaume may both be held individually liable for their own negligence and breach of their mandatory duties to "supervise and prevent harm to the plaintiffs' children." Since, as set forth above, plaintiffs may reasonably be able to show that they were "grossly negligent," there is absolutely no basis to dismiss the negligence claims against them.

their charge and they will be held liable for foreseeable injuries proximately related to the absence of adequate supervision.'" Doe v. Bd. of Educ., 9 A.D.3d 588, 590 (3d Dept. 2004) (citation omitted).  Schools are "obligated to exercise such care [of students] as a parent of ordinary prudence would observe in such circumstances." Mirand v. New York City, 84 N.Y.2d 44, 49 (1994).  The adequacy of "the school's supervision and whether the alleged lack thereof was a proximate cause of the underlying injury generally are questions of fact for a jury to resolve." See Doe, 9 A.D.3d at 590.

Here, plaintiffs' children, based on their ages and autism, were particularly vulnerable to abuse and mistreatment.  Even more than in the normal classroom situation, the School District had a duty to provide at least minimally competent oversight of the Bridge program.  The allegations of widespread and pervasive misconduct by Bridge program staff suggest that the District completely failed to meet even a minimal standard of supervision, and worse, turned a blind eye to evidence and reports of misconduct.  That plaintiffs' children would be injured as a consequence of the District's breach was foreseeable, if not inevitable.  Thus dismissal is not warranted.

### B.    *Respondeat Superior*

The District may be held vicariously liable for the acts and omissions of the non-moving defendants as well as for those of Reidy and DeAlleaume.  "[T]he doctrine of *respondeat superior* renders a master vicariously liable for a tort committed by his servant while acting within the scope of his employment." Riviello v. Waldron, 47 N.Y.2d 297, 302 (1979).  The "scope of employment" test is "'whether the act was done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions.'" Id.  Moreover,

18

"because the determination of whether a particular act was within the scope of the servant's employment is so heavily dependent on factual considerations, the question is ordinarily one for the jury." Id. at 303. "Where the element of general foreseeability exists," even intentional torts such as assault may fall within the "scope of employment" test and subject the employer to vicarious liability. Id. at 304.

Here, plaintiffs may establish that the acts of the non-moving defendants, while venal, were reasonably foreseeable, particularly in the absence of proper training and supervision by the School District. Moreover, plaintiffs may establish that district officials had actual or constructive knowledge of some or all of these acts and failed to intervene, thus acquiescing to and condoning such acts. Under these circumstances, the School District may readily be subject to vicarious liability.[5] Dismissal is not justified.

## POINT IV

## PLAINTIFFS' NEGLIGENT INFLICTION CLAIMS SHOULD NOT BE DISMISSED

Moving defendants contend that plaintiffs' negligent infliction of emotional distress claims against them must be dismissed, because plaintiffs have not alleged that the physical safety of plaintiffs' children was endangered by Reidy or DeAlleaume. However, that is exactly

---

[5] If the Court dismisses plaintiffs' § 1983 claims against any of the moving defendants it should retain jurisdiction over plaintiffs' state-law claims against them under 28 U.S.C. § 1367(a). See Herrick Co. v. SCS Communs., Inc., 251 F.3d 315, 326 (2d Cir. 2001) ("[A]s a general matter, § 1367 expands supplemental jurisdiction to all claims and all parties that are part of the same constitutional case over which there exists independent federal jurisdiction"); Rothberg v. Chloe Foods Corp., 2007 U.S. Dist. LEXIS 53914, *31-32 (E.D.N.Y. July 24, 2007)("Pursuant to 28 U.S.C. § 1367(a), when a federal district court has original jurisdiction over some defendants in an action due to the nature of the claims against those defendants, it also has supplemental jurisdiction over pendant parties and claims, so long as the cause of action against those other defendants arises from the same case or controversy").

19

what plaintiffs allege (see Compl. ¶ 206) and plaintiffs may reasonably be able to establish that Reidy and/or DeAlleaume's negligence was a proximate cause of emotional distress resulting from such endangerment. Thus, this claim should not be dismissed. See Mortise v. United , 102 F.3d 693, 696 (2d Cir. 1996).

## POINT V

## PLAINTIFFS' SECTION 296 CLAIMS SHOULD NOT BE DISMISSED

Plaintiffs allege that defendants discriminated against their children on the basis of their disabilities in violation of New York Executive Law § 296(4), which, as moving defendants acknowledge, prohibits schools from permitting harassment of disabled students on the basis of their disabilities.

Here, the abuse and mistreatment to which plaintiffs' children were subjected was inextricably tied to their disabilities. Some of the abuse, such as name-calling, was overtly disability-based. Indeed, moving defendants do not argue on this motion that plaintiffs have not sufficiently pled allegations of disability-based discrimination or harassment to give rise to a Section 296(4) claim.

Instead, they argue that they are entitled to qualified immunity against plaintiffs' Section 296 claims because, they assert, they acted in good faith and with a reasonable basis. However, these are not issues that can be decided as a matter of law on a motion to dismiss. Moreover, the doctrine of qualified immunity cannot insulate the School District from liability under Section 296. Thus, this branch of defendants' motion must also be denied.

## CONCLUSION

For all of the foregoing reasons, and all of the pleadings and proceedings had herein, this

Court should deny defendants' motion to dismiss.

Dated: September 22, 2008
Goshen, New York

Respectfully submitted,

S/

CHRISTOPHER D. WATKINS (CW 2240)
MICHAEL H. SUSSMAN (MS 3497)
SUSSMAN & WATKINS
P.O. Box 1005
40 Park Place
Goshen, New York 10924
(845) 294-3991
Attorneys for Plaintiff

21